IN THE SUPREME COURT OF NORTH CAROLINA

No. 32A19

Filed 5 June 2020

STATE OF NORTH CAROLINA

v.

QUINTIN SHAROD TAYLOR

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, No. COA18-55, 2018 WL 6614053 (N.C. Ct. App. Dec. 18, 2018) (unpublished), affirming judgments entered on 6 April 2017 by Judge Robert F. Floyd Jr. in Superior Court, Robeson County. Heard in the Supreme Court on 1 October 2019 in session in the Randolph County Historic Courthouse in the City of Asheboro.

*Joshua H. Stein, Attorney General, by Kimberly N. Callahan, Assistant Attorney General, for the State-appellee.*

*Kimberly P. Hoppin for defendant-appellant.*

MORGAN, Justice.

This appeal presents the issue of whether defendant in this case established a fair and just reason for the withdrawal of his guilty plea. After careful consideration of the factors relevant to this question as set forth in this Court's decision in *State v. Handy*, 326 N.C. 532, 391 S.E.2d 159 (1990), we agree with the determination made by the trial court and affirmed by the North Carolina Court of Appeals that defendant failed to demonstrate a fair and just reason for the withdrawal of his guilty plea. As

a result, we modify and affirm the lower appellate court's decision that it rendered in this case.

## I. Factual Background and Procedural History

On 11 July 2011, the Robeson County grand jury returned an indictment charging defendant Quintin Sharod Taylor with first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. These charges arose from defendant's alleged participation in the 13 March 2011 murder of Brandon Lee Hunt in Fairmont, North Carolina. Hunt was shot and killed by Taurus Locklear in the course of a robbery that the State believed was planned and committed by Locklear, defendant, and another accomplice, Shawn Jones. After the State announced its intention to proceed capitally in October 2011, defendant and the State negotiated a plea agreement that would allow defendant to avoid the possibility of receiving the death penalty in exchange for his continued cooperation with the State in the pending prosecutions of Locklear and Jones. At a 24 June 2014 plea hearing in the Superior Court, Robeson County, defendant pled guilty to second-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery. By virtue of this guilty plea, defendant acknowledged that he was in fact guilty of the charged offenses. Defendant consented to the State's summarization of the facts supporting his guilty plea, which included the following pertinent details:

> During the course of the investigation as well, Mr. Jones[ ] was interviewed by law enforcement. He stated that at the time of the shooting that there had been a discussion

between [defendant] and Mr. Locklear that Mr. Locklear was going to rob the victim, Brandon Hunt. He stated that he was going to stick him—going to basically hold him up, going to rob him of some money. They knew he had some money. They knew he kind of sold drugs at a very low level, but they knew he—Mr. Locklear knew he had money. And so there was an agreement.

They sta[r]ted walking over. Mr. Jones . . . . stated that [defendant] walked up first, that he knew the victim. They started talking, just standing there kind of hanging out talking. That Mr. Locklear approached. Mr. Jones stated that he turned to start walking back towards the Subway which is located there about a block or so away, and as he's turning around and started to walk away, he heard a shot. He started running. He said that Mr. Locklear then caught up with him. Mr. Locklear was out of breath. He was in a frenzy. That they ultimately were able to call someone to come pick them up. . . .

. . . . Mr. Jones reported that Mr. Locklear was agitated. He was upset. He was nervous. That he at some point made the statement that he had just shot a guy, indicating that he shot Mr. Hunt. . . .

Based upon that, officers then went back to [defendant] and spoke with him. And after being interviewed, he admitted that he knew that there was going to [be] a robbery. He knew that they—there was a conversation [that] had taken place. He had said that Mr. Jones and Mr. Locklear were the ones that were planning to rob Mr. Hunt. [Defendant] stated that he knew Mr. Hunt. He knew that he wasn't any—he wasn't going to do anything if he were robbed. He was kind of—he was a very easy going guy. He was not the kind of guy that anybody wanted to rob. And so his plan was to go along with this up to the point to try to get Brandon Hunt away from the situation.

He stated that—in this interview as well as subsequent interviews, he stated that when they went over there he was trying to get Mr. Hunt alone. There were other

> individuals that were around. And ultimately, [by] the point he got him alone to try to tell him they needed to leave, it was too late. Mr. Locklear was there. Within a matter of a minute or so, Mr. Locklear pulled out a gun, shot Mr. Hunt, and then everybody scattered at that point.
>
> . . . . [Defendant] did confess to what he knew and it's his involvement which constitute[s] the charges that he is pleading guilty to.

The trial court accepted defendant's guilty plea but deferred imposing sentence pending resolution of the State's case against Locklear, in which defendant was obligated to assist under the terms of the plea agreement.

No trial of Locklear ever occurred in this matter, however. On 25 August 2015, all charges against Locklear in connection with Hunt's murder were voluntarily dismissed by the State, due in large part to the unwillingness of key witnesses to testify honestly against Locklear at trial. The loss and mislabeling of certain items of evidence in the case were also factors which contributed to the State's election to discontinue its prosecution of Locklear.

Upon learning of the dismissal of Locklear's charges, defendant began attempting to retract the guilty plea that he entered in June 2014. Defendant first filed a motion to dismiss the charges against him on 10 November 2015, and then on 28 December 2015 he filed a motion to withdraw his guilty plea. On 7 April 2016, at an evidentiary hearing held in the trial court on defendant's motion to dismiss the charges against him, Detective Roy Grant of the Fairmont Police Department and Special Agent Paul Songalewski of the State Bureau of Investigation testified about

their involvement in the investigation of Hunt's murder. Detective Grant read into evidence a report that he claimed was generated to document the contents of an interview that he and Special Agent Songalewski had conducted with defendant. Although the interview had taken place in the spring of 2011,[1] Detective Grant did not prepare the report until August 2012. In pertinent part, the report stated the following:

> [Special] Agent Songalewski then started talking to [defendant] who told us that he had set the victim up, Mr. Brandon Hunt, to be robbed. [Defendant] stated that Bobby Deshawn Jones and himself had called or spoke with Mr. Hunt and told him to meet them. [Defendant] said he took Taurus Locklear with them. There was an exchange of words between [Mr. Hunt] and Ta[u]rus, and Ta[u]rus pulled out a gun and shot.

In his testimony, Special Agent Songalewski agreed that he had participated in an interview of defendant on 25 March 2011, but he rejected the account of defendant's statements set out in Detective Grant's report, specifically the detective's claims that defendant "told us that he had set the victim up, Mr. Brandon Hunt, to be robbed"; "stated that Bobby Deshawn Jones and himself had called or spoke with Mr. Hunt and told him to meet them"; and "said he took Taurus Locklear with them." At the conclusion of the evidentiary hearing, the trial court orally denied defendant's motion to dismiss.

---

[1] The report indicated that the interview took place on 7 April 2011, but Detective Grant testified that this date was erroneous and that the interview had actually occurred on 25 March 2011.

On 7 June 2016, the trial court held a hearing on defendant's motion to withdraw his guilty plea. Defendant's counsel explained that in his capacity as defendant's attorney, he had advised defendant to accept the terms of the plea agreement offered by the State because, in counsel's view, the account of the interview contained in Detective Grant's report indicated that defendant had admitted to felony murder, even though defendant had "always denied" making the inculpatory statements contained in the report. Defendant's counsel told the trial court during the hearing that he did not realize the discrepancy between Detective Grant's and Special Agent Songalewski's respective accounts of the 25 March 2011 interview until counsel undertook a reexamination of the discovery materials that he had received from the State, spurred by the dismissal of the charges against Locklear. Defendant's counsel argued that defendant had a right to withdraw his guilty plea based upon counsel's failure to provide defendant with effective assistance in the plea agreement process.

Special Agent Songalewski offered testimony at the hearing on defendant's motion to withdraw his guilty plea. Special Agent Songalewski explained that during the 25 March 2011 interview of defendant, he had confronted defendant concerning defendant's prior inconsistent statements to law enforcement officers about his involvement with Locklear and Jones, as well as the attempted robbery and the shooting of Hunt. Special Agent Songalewski testified that defendant then recounted during the interview that he had overheard Locklear and Jones planning to rob Hunt,

with the understanding that Locklear would shoot Hunt if the robbery "did not go down right." According to Special Agent Songalewski, defendant said that he had been involved in the confrontation with Hunt only in an effort to prevent the robbery from going amiss and Hunt consequently being shot. Detective Grant also testified at the hearing, maintaining that defendant had told him and Special Agent Songalewski during the interview that defendant had set up Hunt to be robbed. Defendant did not testify at the hearing.

On 5 April 2017, the trial court entered an order denying defendant's motion to withdraw his guilty plea. Pursuant to the plea agreement, the trial court then sentenced defendant to serve consecutive terms of imprisonment of 157–198 months for the second-degree murder conviction, 64–86 months for the robbery with a dangerous weapon conviction, and 25–39 months for the conspiracy to commit robbery with a dangerous weapon conviction. Defendant gave oral notice of appeal in open court.

In his argument to the Court of Appeals, defendant contended that the trial court erred by denying his motion to withdraw his guilty plea because he had established a fair and just reason for withdrawal. *State v. Taylor*, No. COA18-55, 2018 WL 6614053 (N.C. Ct. App. Dec. 18, 2018) (unpublished). In the alternative, defendant asserted that he received ineffective assistance of counsel during the plea agreement process. In assessing defendant's argument regarding the denial of his motion to withdraw his guilty plea, the Court of Appeals was expressly guided by the

overarching principle identified in *Handy* as the measure to utilize in circumstances in which a criminal defendant seeks to withdraw a guilty plea prior to sentencing; namely, that "the defendant . . . is generally accorded that right if he can show any fair and just reason." *Handy*, 326 N.C. at 536, 391 S.E.2d at 161 (citations and internal quotation marks omitted). The lower appellate court then cited the following factors, which this Court articulated in *Handy* are to be applied in implementing that principle:

> Some of the factors which favor withdrawal include whether the defendant has asserted legal innocence, the strength of the State's proffer of evidence, the length of time between entry of the guilty plea and the desire to change it, and whether the accused has had competent counsel at all relevant times. Misunderstanding of the consequences of a guilty plea, hasty entry, confusion, and coercion are also factors for consideration.

*Id.* at 539, 391 S.E.2d at 163 (citations omitted). The Court of Appeals continued its interpretation of the *Handy* decision by quoting our outlined procedure which states that "[t]he State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." *Id.* In evaluating these so-called "*Handy* factors," the Court of Appeals determined that (1) although defendant had made some inconsistent statements regarding his culpability during the murder investigation, he had not sufficiently asserted his legal innocence prior to his attempt to withdraw his plea; (2) the State's proffer of evidence of defendant's guilt at the plea hearing, although not overwhelming, was uncontested and sufficient; (3) the length

of time between the entry of defendant's guilty plea and the filing of his motion to withdraw it—a full eighteen months—weighed against granting defendant's motion; and (4) defendant did not enter into the plea agreement based upon misunderstanding, haste, confusion, or coercion. *Taylor*, slip op. at 13–19, 2018 WL 6614053, at *6–8.

With regard to competency of counsel as a *Handy* factor, the majority at the Court of Appeals expressed an inability, based on the record before the lower appellate court, to determine "whether Defendant received effective assistance of counsel in deciding to plead guilty." *Taylor*, slip op. at 17–18, 2018 WL 6614053, at *8. The Court of Appeals majority (1) recognized defendant's assertion that he lacked competent counsel because his defense counsel advised defendant to plead guilty after misunderstanding the information provided by Detective Grant and Special Agent Songalewski regarding their different respective accounts of the same interview, (2) recognized the State's assertion that defense counsel showed competence in successfully eliminating defendant's exposure to the death penalty through a plea agreement that culminated with defendant's expression of satisfaction with his counsel upon the entry of his guilty plea, and (3) subsequently opted to express no opinion on the *Handy* factor pertaining to the competency of counsel. *Id.* Consistent with this competency of counsel determination in its application of the *Handy* factors and in light of defendant's alternative ineffective assistance of counsel claim stemming from the same argument, the Court of Appeals declined to rule upon the

merits of his ineffective assistance of counsel claim "based upon the cold record" before the court and dismissed defendant's ineffective assistance of counsel claim "without prejudice to his right to file a motion for appropriate relief based upon his allegations of IAC."[2] *Id.* at 22, 2018 WL 6614053, at *10.

As to the ultimate issue of whether the trial court erred in denying defendant's motion to withdraw his guilty plea in light of the trial court's consideration and application of the *Handy* factors, the Court of Appeals majority affirmed the trial court's denial of defendant's motion and dismissed defendant's ineffective assistance of counsel claim without prejudice to his right to raise it in a future motion for appropriate relief. *Id.* The lower appellate court concluded that defendant "failed to demonstrate a fair and just reason for the withdrawal of his plea." *Id.* at 19, 2018 WL 6614053, at *8. The Court of Appeals went further, offering that even if defendant could show that he had established a fair and just reason to support the withdrawal of his guilty plea, nonetheless "his motion was still properly denied because the State presented concrete evidence at the withdrawal hearing of prejudice to its case against him should the motion be granted." *Id.*

While concurring with the judgment of the Court of Appeals majority "to dismiss defendant's independent ineffective assistance of counsel ("IAC") claim without prejudice to his right to reassert it in a motion for appropriate relief ("MAR")

---

[2] "IAC" is a common abbreviation in legal references for "ineffective assistance of counsel."

in the superior court," Judge Elmore, dissenting in part, "disagree[d] with the majority's application and balance of the *Handy* factors, and believe[d] defendant has satisfied his burden of establishing 'any fair and just reason' to allow the withdrawal of his guilty plea that the State's showing of concrete prejudice failed to refute." *Taylor*, slip op. at 1, 2018 WL 6614053, at *10 (Elmore, J., concurring in part and dissenting in part). The dissenting judge agreed with defendant's position on each of the four most prominent and individualized *Handy* factors and concluded that "the State failed to demonstrate it would suffer concrete prejudice by its reliance on defendant's plea, and thus failed to tilt the scales against defendant's considerably weighty showing." *Id.* at 22, 2018 WL 6614053, at *19.

Defendant filed his notice of appeal on 22 January 2019, based upon the partial dissenting opinion at the Court of Appeals. In the parties' respective arguments to this Court, there is no dispute between defendant and the State as to the appropriateness of the application of the *Handy* factors to resolve the identified issue in this case. As elucidated in the majority and dissenting opinions of the lower appellate court, the parties' disagreement here focuses upon the appropriate consideration, application, and balance of the specified factors. After carefully reviewing the pertinent facts, the procedural circumstances, and the substantive legal arguments presented by the parties in this case, we believe that the evaluation of the *Handy* factors and their accorded weight as determined by the Court of Appeals

majority was proper and correct. As a result, we affirm this portion of the decision of the Court of Appeals majority.

## II. Examination and Application of the *Handy* Factors

*Handy* involved a circumstance in which the defendant originally pled not guilty at his arraignment for the charge of murder. *Handy*, 326 N.C. at 534, 391 S.E.2d at 160. Two months later, during a hearing which was conducted for the resolution of final pretrial motions, the defendant moved to withdraw his plea of not guilty in order to enter a plea of guilty to felony murder. *Id.* The trial court accepted and recorded the defendant's guilty plea. *Id.* On the following morning, before the proceedings reconvened, defense counsel moved to withdraw the defendant's guilty plea. *Id.* at 535, 391 S.E.2d at 160. The trial court treated the motion to withdraw the plea as a motion for appropriate relief and denied the defendant's motion. *Id.* In ruling that the trial court "erred in treating defendant's motion made prior to verdict as a motion for appropriate relief," this Court reiterated the principle that "[a] motion for appropriate relief is a *post-verdict* motion," and therefore, "[a] motion for appropriate relief is not proper where made prior to sentencing when there is no jury verdict." *Id.* at 535–36, 391 S.E.2d at 160–61. We utilized this opportunity to clarify and explain the applicable legal standards in such matters by (1) establishing that a defendant who seeks to withdraw a guilty plea before sentencing occurs is generally accorded that right if the defendant can show any fair and just reason, (2) confirming that there is no absolute right to withdraw a guilty plea, (3) emphasizing that motions

to withdraw a plea made prior to sentencing should be granted with liberality, and (4) recognizing ancillary holdings from federal and other state courts which are not directly relevant to the instant case. *Id.* at 536–38, 391 S.E.2d at 161–62. This Court then assembled from a variety of court jurisdictions and legal publications a group of factors to guide the trial courts in their respective determinations of motions that are made by criminal defendants who seek to withdraw their guilty pleas prior to sentencing. Just as we applied the governing factors to resolve the identified issue in *Handy*, we now turn to replicate this analytical approach in the present case.

**Factor 1: Defendant's Assertion of Legal Innocence**

Defendant represents that he asserted his legal innocence of the charges against him through proffer of counsel and through defendant's pre-arrest statements. Defendant acknowledges, however, that he made inconsistent statements to law enforcement officers during their investigation of the offense. Depictions of these statements by defendant included his admission that he had advance knowledge of the plan that Locklear and Jones created in order to unlawfully take money from Hunt, that defendant had "set up" Hunt to be robbed by Locklear and Jones, that defendant was aware of Locklear's plan to shoot Hunt if the robbery of Hunt did not proceed as anticipated, that defendant had agreed to participate in the robbery, and that defendant was present during the attempted robbery and the actual killing of Hunt. Additionally, at the plea hearing, defendant admitted his guilt to the charges against him, did not couch his guilt by virtue of a "no contest" plea or

an Alford plea,[3] agreed that there were facts to support his guilty plea, and stipulated to the sufficiency of the factual basis as rendered in open court by the State.

We agree with the Court of Appeals' assessment of this factor and we are likewise "unpersuaded by Defendant's argument that his inconsistent statements to law enforcement prior to his arrest are sufficient to negate his later guilty plea for purposes of the *Handy* test" and that "this factor does not weigh in favor of Defendant." *Taylor*, slip op. at 14, 2018 WL 6614053, at *6.

**Factor 2:  The Strength of the State's Proffer of Evidence**

Defendant describes the State's proffer of evidence at the plea hearing as "not overwhelming" and the dissenting judge of the Court of Appeals characterized the State's proffer of evidence as to defendant's guilt as "weak." *Id.* at 4, 2018 WL 6614053, at *11 (Elmore, J., concurring in part and dissenting in part). Defendant extrapolates from the State's dismissal of the charges against Locklear that "the State would have difficulty presenting sufficient evidence of [defendant's] guilt" since defendant was deemed to be "Locklear's accomplice and co-conspirator." Issues that the State had with regard to some of its tangible and testimonial evidence were also cited by defendant as matters which effectively diluted the force of the State's evidence against him. Apart from these representations by defendant, the dissenting

---

[3] An *Alford* plea is a type of guilty plea recognized by North Carolina's General Court of Justice in which a criminal defendant accepts that the State has sufficient evidence to convict him, but the defendant does not actually admit his guilt.

judge at the Court of Appeals viewed the inadequacy of the State's proffer of evidence from a different perspective through the dissenting judge's disagreement with the trial court's standard by which to gauge defendant's challenge to the strength of the State's proffer of evidence.

These approaches of defendant and the dissenting judge at the Court of Appeals, which attempt to blunt the strength of the State's proffer of evidence, fade in the face of the observation of the Court of Appeals majority that "the State's proffer of evidence at the plea hearing was uncontested" and "included statements from multiple witnesses indicating that they saw Defendant conversing with Locklear and Jones during the time period immediately prior to Hunt's killing." *Id.* at 15, 2018 WL 6614053, at *7.

While all three commentators on the strength of the State's proffer of evidence—defendant, the dissenting judge at the Court of Appeals, and even the Court of Appeals majority—employed the phrase "not overwhelming" in describing that proffer of evidence, only the lower appellate court's majority subscribed to the assessment term that is dispositive of this *Handy* factor: "sufficient." *See id.* Since the strength of the State's proffer of evidence against defendant that was presented as the factual basis at the plea hearing was essentially uncontested and therefore sufficient, we agree with the Court of Appeals that "this factor likewise fails to support withdrawal of his guilty plea." *Id.*

**Factor 3:  The Length of Time Between Entry of the Guilty Plea and the Desire to Change It**

Defendant entered his guilty plea on 24 June 2014. On 28 December 2015—a full eighteen months later—defendant expressed his desire to change his guilty plea prior to resentencing through his motion filed in the trial court to withdraw his guilty plea. He contends that the significant lapse in time between the two events regarding his guilty plea was occasioned by the dismissal of all charges against Locklear fourteen months after defendant's entry of his guilty plea, which in turn led to belated discoveries about the inconsistencies between the versions of defendant's statements as reported by Detective Grant and Special Agent Songalewski that defense counsel made in reviewing the facts and circumstances of the case. Defendant argues that this delayed enlightenment, coupled with other intervening events during the time period under scrutiny, constitute "changed circumstances" that justify the withdrawal of his guilty plea despite the lengthy interim period between the entry of his plea and his filing of the motion to withdraw it. Defendant buttresses his stance on this *Handy* factor with the dissenting judge at the Court of Appeals that not only agrees with his "changed circumstances" assertion but also advances the premise that the "delay clock"—as the dissenting judge coins it—"should start when defendant first learned the true import of the vital piece of evidence supporting his decision to accept the State's plea to avoid the death penalty," thus reducing the length of time between the entry of his guilty plea and defendant's desire to change it through filing his

motion to withdraw the plea to a "most conservative calculation" of forty-eight days. *Taylor*, slip op. at 6, 2018 WL 6614053, at \*12 (Elmore, J., concurring in part and dissenting in part).

In the seminal *Handy* case, this Court made the following observation: "A fundamental distinction exists between situations in which a defendant pleads guilty but changes his mind and seeks to withdraw the plea before sentencing and in which a defendant only attempts to withdraw the guilty plea after he hears and is dissatisfied with the sentence." *Handy*, 326 N.C. at 536, 391 S.E.2d at 161. In the present case, while defendant attempted to withdraw his guilty plea before he heard the sentence which he would receive, nonetheless defendant had already expressed dissatisfaction with any sentence which would be imposed in light of the State's dismissal of all charges against Locklear. While defendant and the dissenting judge at the Court of Appeals couch the extended length of time between the entry of defendant's guilty plea and the filing of defendant's motion to withdraw his guilty plea in terms of "changed circumstances" due to defendant's lack of "the full benefit of competent counsel at all relevant times," we are mindful that defendant has acknowledged that his quest to withdraw his guilty plea was prompted by his interest "regarding the State's dismissal with prejudice of the case against co-defendant Taurus Locklear." *Taylor*, slip op. at 6, 2018 WL 6614053, at \*12 (Elmore, J., concurring in part and dissenting in part). When defendant was faced with the prospect of the State's potential pursuit of the death penalty for his first-degree

murder charge, defense counsel and the State negotiated a plea agreement in which defendant was spared a capital murder prosecution in exchange for defendant pleading guilty to second-degree murder and other criminal offenses, agreeing that he was satisfied with his counsel's legal services, and accepting the existence of a factual basis as grounds for his guilty plea—all before sentencing. After defendant learned that the charges against Locklear had been dismissed prior to the imposition of judgment, defendant now claims that he was bereft of competent counsel at a critical juncture in the proceedings and that "he was misadvised on the vital evidence supporting his decision to plead guilty"—all upon the inevitability of sentencing.

It is apparent that defendant's attempt to withdraw his guilty plea after a major passage of time is spawned by his dissatisfaction with the certainty of his sentence in light of the State's dismissal of the charges against Locklear. This circumstance fits the logic that this Court employed in *Handy* in differentiating between a defendant's effort to withdraw a guilty plea before sentencing and a defendant's effort to withdraw a guilty plea after sentencing when defendant is dissatisfied with the sentence. Defendant here was dissatisfied with the sentence which he was destined to receive, which compelled him to seek to withdraw his guilty plea. The significant length of time between the entry of defendant's guilty plea and his desire to change it through filing his motion to withdraw the guilty plea serves to exacerbate this Court's proven concern in *Handy* in cases like the current one in

which a defendant attempts to withdraw a guilty plea. Hence, this *Handy* factor does not favor the withdrawal of defendant's plea.

**Factor 4: Competency of Counsel**

As we observed earlier in our review of the decision that was issued in this case by the Court of Appeals, the lower appellate court assessed the *Handy* factor regarding the competency of counsel and decided to "express no opinion as to whether this factor weighs in favor of Defendant or the State for purposes of the *Handy* factors." *Taylor*, slip op. at 18, 2018 WL 6614053, at *8. In weighing both defendant's contention that "he lacked competent counsel because his trial attorney failed to realize that the reports written by Detective Grant and Special Agent Songalewski recounted the same interview and advised Defendant to plead guilty based upon a misunderstanding of the evidence" and the State's contention that defendant had competent counsel available at all relevant times as "his attorneys successfully negotiated a plea agreement reducing his charge to second-degree murder—thereby eliminating any chance that he would face the death penalty—and that Defendant expressed satisfaction with his trial counsel at the 24 June 2014 plea hearing," the Court of Appeals concluded that it was "unable to determine based upon the record before [the Court of Appeals] whether Defendant received effective assistance of counsel in deciding to plead guilty." *Id.* at 17–18, 2018 WL 6614053, at *8.

In our view, the Court of Appeals majority has accurately captured the salient points of the parties' respective positions on the *Handy* factor concerning the

competency of counsel. The dissenting judge at the Court of Appeals opined that "defendant has established he lacked the full benefit of competent counsel at all relevant times" and therefore "this *Handy* factor weighs heavily in favor of withdrawal." *Id.* at 11, 2018 WL 6614053, at *14 (Elmore, J., concurring in part and dissenting in part).

In considering each *Handy* factor individually, a court is not required to expressly find that a particular factor benefits either the defendant or the State in assessing whether a defendant has shown any fair and just reason for the withdrawal of a guilty plea. In *Handy*, this Court listed "[s]ome of the factors which favor withdrawal." *Handy*, 326 N.C. at 539, 391 S.E.2d at 163. This depiction of the identification of the *Handy* factors inherently illustrates that the slate of them is not intended to be exhaustive nor definitive; rather, they are designed to be an instructive collection of considerations to aid the court in its overall determination of whether sufficient circumstances exist to constitute any fair and just reason for a defendant's withdrawal of a guilty plea.

To this end, although the dissenting judge at the Court of Appeals takes issue with the majority's decision to express no opinion on the *Handy* factor concerning the competency of counsel, this Court does not regard the declination of the lower appellate court to adopt a position on the factor to be an abdication of the legal forum's duty. We are satisfied that the Court of Appeals has amply shown that it has fully appraised the *Handy* factor concerning the competency of counsel as it evaluates the

entire array of factors, and we are unable to find any error in the manner in which the lower appellate court has addressed this issue.

### Additional Factors:  Misunderstanding of the Consequences of a Guilty Plea, Hasty Entry, Confusion, and Coercion

Among the additional factors that this Court mentioned in *Handy* is the existence of coercion in a defendant's guilty plea as a trial court determines whether any fair and just reason has been shown for the withdrawal of the guilty plea. Here, defendant submits that there is "some element of coercion" involved when a defendant either accepts an offer from the State to plead guilty or otherwise be subject to "a death sentence should he lose at trial." A defendant's exposure to the death penalty does not amount to coercion; as the term is utilized in *Handy*, regarding whether an accused was threatened, pressured, forced, or similarly compelled to enter a guilty plea. Defendant also argues that his eighth-grade reading level is also "worthy of consideration" for purposes of the additional *Handy* factors.

Defendant's answers to the questions posed to him by the trial court from the transcript of plea at the plea hearing contradict his representation that his guilty plea was coerced or otherwise in contravention of the additional *Handy* factors. Such questions intentionally probed the voluntariness of defendant's guilty plea and his understanding of the consequences of his guilty plea. In responding to these queries from the trial court, defendant unequivocally indicated that no one had "promised

[him][4] anything or threatened [him] in any way to cause [him] to enter th[e] plea against [his] wishes"; that he "enter[ed] th[e] plea of [his] own free will, fully understanding what [he was] doing"; and that he understood the various aspects and ramifications of his plea. In light of this, neither the additional *Handy* factor of coercion nor any other additional factor operate to advance the cause of defendant to withdraw his guilty plea based upon any fair and just reason.

Having examined each of the factors that this Court identified in *Handy* in order to ascertain whether there was any fair and just reason to allow defendant's motion to withdraw his guilty plea, we agree with the conclusion of the Court of Appeals that defendant has failed to demonstrate that there is a fair and just reason for the withdrawal of his plea.

**Prejudice to the State**

Upon its conclusion "that Defendant has failed to demonstrate a fair and just reason for the withdrawal of his plea," the Court of Appeals went on to state the following:

> Even assuming *arguendo* that Defendant could show that he has established a fair and just reason supporting the withdrawal of his guilty plea, his motion was still properly denied because the State presented concrete evidence at the withdrawal hearing of prejudice to its case against him should the motion be granted.

---

[4] Pronouns in the third person are substituted for pronouns in the second person because the trial court's questions from the transcript of plea were directed to defendant.

*Taylor*, slip op. at 19, 2018 WL 6614053, at *8.

After the delineation of the factors in *Handy*, we offered further guidance concerning the analytical process that a trial court should undertake in its determination of a defendant's motion to withdraw his guilty plea. "The State may refute the movant's showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea. *Prejudice to the State is a germane factor against granting a motion to withdraw.*" *Handy*, 326 N.C. at 539, 391 S.E.2d at 163 (emphasis added).

Once the Court of Appeals determined that its consideration of the *Handy* factors did not convince that court to conclude that defendant had shown any fair and just reason to allow the withdrawal of his guilty plea, the lower appellate court was not required to engage in an analysis of any potential prejudice to the State in the event that the withdrawal of the guilty plea had been allowed. Since the Court of Appeals arrived at the outcome that no fair and just reason existed for such withdrawal because the *Handy* factors had not been met by defendant, prejudice to the State did not arise as a germane factor for consideration against granting defendant's motion to withdraw his guilty plea. The exploration of this unreached factor by the Court of Appeals therefore constitutes unnecessary surplusage which clutters its learned analysis, so we disavow that portion of the Court of Appeals' decision.

### III. Ineffective Assistance of Counsel

For the same reasons that we articulated in our assessment of the *Handy* factor concerning the competency of counsel, in which we deferred to the ability of the Court of Appeals to sufficiently consider the factor without a requirement to rule that said factor supports the position of defendant or the State, this Court adopts the decision of the Court of Appeals majority—with which the dissenting judge at the Court of Appeals concurs—to dismiss defendant's ineffective assistance of counsel claim without prejudice to his right to file a motion for appropriate relief to reassert that claim.

## IV. Conclusion

For the reasons stated, we affirm the decision of the Court of Appeals in its consideration and application of the factors identified by this Court in *Handy* and the lower appellate court's resulting determination that the trial court did not err in denying defendant's motion to withdraw his guilty plea based upon the trial court's ruling that defendant failed to show any fair and just reason for the withdrawal of his guilty plea. In light of our holding, we disavow the dicta contained in the decision of the Court of Appeals regarding the subject of prejudice to the State after the lower appellate court's stated conclusion that defendant had not satisfied the *Handy* factors. Defendant's ineffective assistance of counsel claim is dismissed without prejudice to his right to file a motion for appropriate relief in the trial court to reassert that claim. The decision of the Court of Appeals is therefore modified and affirmed.

MODIFIED AND AFFIRMED.

Justice DAVIS did not participate in the consideration or decision of this case.